01
02
03
04
05

06                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
07                                    AT SEATTLE

08  ALYSSA A. ARNOLD,                       )
                                            )   CASE NO. C10-1643-RAJ
09              Plaintiff,                   )
                                            )
10      v.                                   )
                                            )   REPORT AND RECOMMENDATION
11  MICHAEL J. ASTRUE, Commissioner of       )
    Social Security,                         )
12                                           )
                Defendant.                   )
13  _____ )

14          Plaintiff Alyssa A. Arnold appeals the final decision of the Commissioner of the Social

15  Security Administration ("Commissioner") which denied her applications for Disability

16  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17  of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18  administrative law judge ("ALJ").   For the reasons set forth below, the Court recommends that

19  the Commissioner's decision be AFFIRMED.

20                          I.   FACTS AND PROCEDURAL HISTORY

21          Plaintiff was born in 1975 and was 26 years old on her alleged onset date of disability.

22  (Administrative Record ("AR") at 27.)   She obtained a General Equivalency Diploma

REPORT AND RECOMMENDATION
PAGE -1

01 ("GED") and completed one year of community college.  (AR at 27, 139, 200.)  Her past

02 work experience includes employment as a grocery bagger, cashier, riveter, nurse's assistant,

03 and hand packager.  (AR at 29-30, 48, 145.)  Plaintiff was last gainfully employed in 2001.

04 (AR 29.)

05      Plaintiff asserts that she is disabled due to epilepsy/seizures, depression, cognitive

06 disorder, borderline personality disorder, cocaine dependence, amphetamine abuse, and alcohol

07 abuse.  (AR at 11.)  She asserts an onset date of February 1, 2002.  *Id.*

08      The Commissioner denied plaintiff's claim initially and on reconsideration.  (AR  at

09 57-60.)  Plaintiff requested a hearing, which took place on July 24, 2009.  (AR 20-55.)

10 The ALJ heard testimony from plaintiff and vocational expert Brian Sorenson.  *Id*.  On

11 September 9, 2009, the ALJ issued a decision finding plaintiff not disabled.   (AR at 9-19.)

12      Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals

13 Council (AR at 1-30), making the ALJ's ruling the "final decision" of the Commissioner as that

14 term is defined by 42 U.S.C. § 405(g).   On October 11, 2010, plaintiff timely filed the present

15 action challenging the Commissioner's decision.  (Dkt. No. 3.)

16                    II.   JURISDICTION

17      Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

18 405(g) and 1383(c)(3).

19                 III.   STANDARD OF REVIEW

20      Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

21 social security benefits when the ALJ's findings are based on legal error or not supported by

22 substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

01  Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

02  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

03  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for

04  determining credibility, resolving conflicts in medical testimony, and resolving any other

05  ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While

06  the Court is required to examine the record as a whole, it may neither reweigh the evidence nor

07  substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954

08  (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is

09  the Commissioner's conclusion that must be upheld. *Id*.

10      The Court may direct an award of benefits where "the record has been fully developed

11  and further administrative proceedings would serve no useful purpose." *McCartey v.

12  Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

13  (9th Cir. 1996)). The Court may find that this occurs when:

14          (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
            claimant's evidence; (2) there are no outstanding issues that must be resolved
15          before a determination of disability can be made; and (3) it is clear from the record
            that the ALJ would be required to find the claimant disabled if he considered the
16          claimant's evidence.

17  *Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

18  erroneously rejected evidence may be credited when all three elements are met).

19                                  IV. DISCUSSION

20      As the claimant, Ms. Arnold bears the burden of proving that she is disabled within the

21  meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

22  Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in

01   any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

02   expected to last, for a continuous period of not less than twelve months.   42 U.S.C. §§

03   423(d)(1)(A), 1382c(a)(3)(A).   A claimant is disabled under the Act only if her impairments

04   are of such severity that she is unable to do her previous work, and cannot, considering her age,

05   education, and work experience, engage in any other substantial gainful activity existing in the

06   national economy.   42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094,

07   1098-99 (9th Cir. 1999).

08         The Commissioner follows a five-step sequential evaluation process for determining

09   whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920.   At step one, it must be

10   determined whether a claimant has engaged in substantial gainful activity.   20 C.F.R.

11   §§ 404.1520(b), 416.920(b).   The ALJ found plaintiff has not engaged in substantial gainful

12   activity since February 1, 2002, the alleged onset date.   (AR at 11.)   At step two, it must be

13   determined whether a claimant suffers from a severe impairment.   The ALJ found plaintiff has

14   the following severe impairments:   epilepsy/seizures (some suspected pseudoseizures);

15   depression, not otherwise specified; cognitive disorder, not otherwise specified; borderline

16   personality disorder; cocaine dependence; amphetamine abuse; and alcohol abuse.   *Id*.   Step

17   three asks whether a claimant's impairment or combination of impairments meets or medically

18   equals one of the listed impairments in 20 C.F.R. Part 404, Subpt P, App. 1.   The ALJ found

19   plaintiff does not have an impairment or combination of impairments that meets or medically

20   equals a listed impairment.   (AR at 13.)   If the claimant's impairments do not meet or equal a

21   listing, the Commissioner must assess residual functional capacity ("RFC") and determine at

22   step four whether the claimant has demonstrated an inability to perform past relevant work.

01   The ALJ found plaintiff has the RFC to perform a full range of unskilled work at all exertional

02   levels but with nonexertional limitations.  (AR at 14.)   If the claimant is able to perform her

03   past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the

04   Commissioner at step five to show that the claimant can perform other work that exists in

05   significant numbers in the national economy, taking into consideration the claimant's RFC,

06   age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180

07   F.3d at 1099-1100.   The ALJ found plaintiff is capable of performing her past relevant work as

08   a grocery bagger and hand packager.  (AR at 18.)   Alternatively, the ALJ found plaintiff is

09   capable of making a successful adjustment to other work that exists in significant numbers in

10   the national economy.  (AR at 19.)   The ALJ concluded plaintiff has not been under a

11   disability from February 1, 2002, through the date of the decision.  *Id*.

12        Plaintiff argues that the ALJ:  (1) failed to include all of her limitations in the RFC

13   assessment, (2) erred in the analysis of her credibility, (3) failed to provide germane reasons for

14   rejecting lay witness testimony, (4) erred in evaluating whether she met or equaled a listing, (5)

15   erred in finding her capable of returning to her past work at step four; and (6) failed to meet her

16   burden at step five.  (Dkt. No. 14.)   She requests remand for an award of benefits, or,

17   alternatively, for further administrative proceedings.  *Id*. at 21.   The Commissioner argues

18   that the ALJ's decision is supported by substantial evidence and should be affirmed.   (Dkt. No.

19   15.)   For the reasons described below, the Court agrees with the Commissioner.

20        A.     Residual Functional Capacity Assessment

21        The principal issue on appeal is whether the ALJ erred in determining that plaintiff was

22   capable of performing a full range of work at all exertional levels, and the RFC at step four

REPORT AND RECOMMENDATION
PAGE -5

01   consistent with this determination.   This requires consideration of whether the ALJ properly

02   considered and evaluated the medical opinion evidence as well as plaintiff's testimony and the

03   testimony of lay witnesses.

04          An RFC is the "maximum degree to which [a plaintiff] retains the capacity for sustained

05   performance of the physical-mental requirements of jobs."   20 C.F.R. 404, Subpt. P, App. 2

06   §200(c).   It is an administrative decision as to the most a plaintiff can do, despite her

07   limitations.   SSR 96-8p.   The ALJ must assess all of the relevant evidence, including evidence

08   regarding symptoms that are not severe, to determine if the claimant retains the ability to work

09   on a "regular and continuing basis," *e.g.*, eight hours a day, five days a week.   *Reddick v.*

10   *Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995);

11   SSR 96-8p.

12          Here, the ALJ determined that plaintiff had the RFC to perform the full range of

13   unskilled work at all exertional levels with no exposure to hazards, including heights and

14   dangerous machinery, and avoidance of concentrated exposure to humidity, extreme cold,

15   fumes, and gases.   (AR at 13-14.)   Plaintiff argues that this finding did not capture all of her

16   mental functional limitations.   (Dkt. No. 14 at 4-11.)   Specifically, she contends that the ALJ

17   improperly rejected the opinions of examining psychologist James D. Czysz, Psy.D.

18               1.    <u>Evaluation of Medical Evidence</u>

19          As a matter of law, more weight is given to a treating physician's opinion than to that of

20   a non-treating physician because a treating physician "is employed to cure and has a greater

21   opportunity to know and observe the patient as an individual."   *Magallanes*, 881 F.2d at 751;

22   20 C.F.R. § 404.1527(d)(1)-(2).   "Likewise, greater weight is accorded to the opinion of an

01  examining physician than a non examining physician." *Andrews*, 53 F.3d at 1041.   However,

02  under certain circumstances, a treating or examining physician's opinion can be rejected,

03  whether or not that opinion is contradicted by other medical evidence of record.   *Magallanes*,

04  881 F.2d at 751.   The ALJ must give clear and convincing reasons for rejecting a treating or

05  examining physician's opinion if that opinion is not contradicted by other evidence, and

06  specific and legitimate reasons if it is.   *Reddick*, 157 F.3d at 725.   "This can be done by setting

07  out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

08  interpretation thereof, and making findings."   *Id*. (citing *Magallanes*, 881 F.2d at 751).   The

09  ALJ must do more than merely state his conclusions.   "He must set forth his own

10  interpretations and explain why they, rather than the doctors', are correct."   *Id*. (citing *Embrey*

11  *v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).   Such conclusions must at all times be

12  supported by substantial evidence.   *Id*.

13          Opinions from non-examining medical sources are to be given less weight than treating

14  or examining doctors.   *Lester*, 81 F.3d at 831.   However, an ALJ must always evaluate the

15  opinions from such sources and may not simply ignore them.   In other words, an ALJ must

16  evaluate the opinion of a non-examining source and explain the weight given to it.   Social

17  Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.   Although an ALJ generally gives

18  more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

19  non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

20  consistent with other independent evidence in the record.   *Thomas*, 278 F.3d at 957; *Orn v.*

21  *Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007).

22  //

REPORT AND RECOMMENDATION
PAGE -7

01        a.    James D. Czysz, Psy.D.

02        Examining psychologist James D. Czysz, Psy.D., completed a psychological evaluation

03   of the plaintiff for the Department of Social and Health Services ("DSHS") on December 26,

04   2006.  (AR at 266-71.)   Dr. Czysz found that plaintiff had severe limitations in her ability to

05   understand, remember, and follow complex instructions; marked limitations in her ability to

06   learn new tasks, exercise judgment, make decisions, perform routine tasks, relate appropriately

07   to co-workers and supervisors, interact appropriately in public contacts, respond appropriately

08   to and tolerate the pressures and expectations of a normal work setting; and moderate

09   limitations in her ability to understand, remember, and follow simple instructions, control

10   physical or motor movements, and maintain appropriate behavior.  (AR at 268.)   He

11   concluded that her "memory impairment appears valid" and opined that her "difficulty appears

12   to be a combination of cognitive impairment and personality features."  (AR at 268.)   He

13   believed "[h]er depression may resolve with treatment . . . but her memory difficulty appears

14   chronic."  (AR at 269.)   As such, he recommended "more extensive testing and social security

15   facilitation."  Id.

16        The ALJ gave Dr. Czysz's opinions "little weight," finding them inconsistent with

17   "other objective medical evidence and the [plaintiff's] ability to engage in a wide range of

18   activities."  (AR at 16.)   The ALJ noted that plaintiff was voluntarily hospitalized from

19   January 28, 2006, through February 3, 2006, after presenting to Harborview Medical Center

20   with depression and suicidal ideation.  (AR at 218-234.)   Plaintiff reported using crack

21   cocaine constantly for the previous several weeks.  (AR at 219.)   The discharge summary,

22   prepared by psychiatrist Jacquelyn Ball, M.D., identified plaintiff's diagnoses as

01  cocaine-induced mood disorder, depressed type; cocaine dependence, episodic; alcohol abuse,

02  episodic; amphetamine abuse, episodic; borderline personality disorder; and seizure disorder.

03  (AR at 218.)   Throughout plaintiff's hospitalization, it was noted that although plaintiff

04  "perseverated on her memory problems for which she believed that she needed psychiatric

05  disability," she "exhibited no actual memory or cognitive deficits while on the unit and scored a

06  5.6/6.0 on the Allen Cognitive Level assessment, which is just short of the normal range."

07  (AR at 222.)   Dr. Ball also noted that plaintiff was "quite persistent" in requesting that her

08  doctors help her and her husband with disability benefits, and "became angry that she had not

09  been given any disability benefits and at the 'way we're being treated,' and left without

10  participating in her discharge plan.  *Id*.  Dr. Ball assigned plaintiff a GAF score of 55 (AR at

11  219), indicating moderate symptoms or moderate difficulty in social, occupational, or school

12  functioning (e.g., few friends, conflicts with peers or co-workers).  American Psychiatric

13  Ass'n, Diagnostic and Statistical Manual of Mental Health Disorders (Text. Rev., 4th ed. 2000).

14  She recommended that plaintiff "re-engage in [the] workforce."   (AR at 223.)

15       The ALJ noted that plaintiff was hospitalized again from April 7, 2006, through April

16  14, 2006, after reporting suicidal ideation when she presented with an infected finger laceration.

17  (AR at 235-56.)   The discharge summary, prepared by psychiatrist Ryan Bell, M.D., noted that

18  since her discharge in February, plaintiff and her husband had been homeless and were sleeping

19  under a bridge, and that plaintiff "compensated rapidly after being admitted to the unit."   (AR

20  at 236-37.)   It was again noted that plaintiff complained about her memory loss, "but it did not

21  interfere with her functioning in any way."   (AR at 237.)   Plaintiff remembered staff, was

22  oriented to date, place, person, and time, and was able to give directions to the bridge where her

01   personal effects had been left before she came to the emergency room.   She also remembered

02   her medication, gave detailed accounts of her past history, and could recall specific facts such

03   as her discharge date.   *Id*.   Dr. Bell reported "that her memory loss manifested itself in her

04   reported inability to remember her room number without having a sign placed, and unusual

05   lacunae in her memory such as being unable to recall why her husband had been incarcerated,

06   or indeed why she had been incarcerated."   *Id*.   Dr. Bell did not assess any significant

07   limitations upon discharge.   (AR at 238.)

08        The Commissioner argues that the ALJ properly relied on Dr. Ball's and Dr. Bell's

09   findings regarding plaintiff's memory loss in discrediting Dr. Czysz's opinions.   (Dkt. No. 15

10   at 12.)   The Court agrees that the ALJ properly considered the Harborview medical providers'

11   findings.   While the reports of Dr. Ball and Dr. Bell are not treating opinions, they nonetheless

12   constituted objective medical evidence that undermined Dr. Czysz's opinions.   *Id*.   An ALJ

13   may properly reject an opinion that is conclusory and inconsistent with the record.   *See*

14   *generally Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999); *Young v. Heckler*, 803 F.2d

15   963, 968 (9th Cir. 1986).

16        Plaintiff concedes that the Harborview doctors questioned the legitimacy of plaintiff's

17   memory problems based on their observations during two psychiatric admissions, but argues

18   that Dr. Czysz reached a different conclusion based on his own psychological examination,

19   which included the administration of psychological tests.   (Dkt. No. 14 at 6.)   Plaintiff

20   contends that Dr. Czysz's opinions were consistent with the opinions of other examining and

21   non-examining medical sources which were adopted by the ALJ, including the opinions of

22   examining psychologist Phyllis Sanchez, Ph.D., consultative examiner David Mashburn, Ph.D.,

REPORT AND RECOMMENDATION
PAGE -10

01 and state agency medical consultants Richard Borton, Ph.D., and Renee Eisenhauer, Ph.D.

02 (Dkt. 14 at 6-10.)

03       Dr. Sanchez conducted a neuropsychological evaluation of the plaintiff on February 2,

04 2007.   (AR at 272-78.)   She found that plaintiff has a long history of eating disorder,

05 psychiatric disturbance, substance abuse, and epilepsy with real and pseudoseizures.   (AR at

06 278.)   Dr. Sanchez notes:

> She [gave] a detailed accounting of her history, at least some of which can be
> readily verified (work, treatment and marital status) by review of outside sources,
> yet she maintains that since her overdose in 1994 she has had significant and
> debilitating memory problems.   Several clinicians who have evaluated her in the
> past . . . have been highly skeptical that her reported memory problems are
> debilitating in any way.   Ms. Arnold's poor performance on any formal memory
> test is very suspicious given her ability to function day to day and recall a myriad of
> details in her life, including her recent life events.
>
> Ms. Arnold has a tendency towards perfectionism and distorted self-image, and
> these tendencies may contribute significantly to what she perceives as her memory
> disability.

14 (AR at 278.)   Although Dr. Sanchez did not find any limitations, she stated that plaintiff's

15 "prognosis is poor . . . regardless of the reality of her cognitive and physical status, as her

16 beliefs, subjective complaints and long-term personality style will drive her behavior in the

17 future."   *Id.*   The ALJ gave Dr. Sanchez's findings significant weight, but gave her opinion

18 that plaintiff had a poor prognosis little weight because she found it inconsistent with the

19 plaintiff's ability to engage in wide range of activities.   (AR at 16.)   The Court agrees with the

20 Commissioner that Dr. Sanchez found no limitations and the ALJ was not required to find Dr.

21 Sanchez's opinion supported Dr. Czysz's opinion as plaintiff argues.

22 //

REPORT AND RECOMMENDATION
PAGE -11

01      Likewise, the ALJ properly weighed the opinion of psychological consultative

02 examiner David Mashburn, Ph.D.  (AR at 327-31.)  On June 7, 2007, Dr. Mashburn

03 conducted a psychological evaluation of the plaintiff.  He found that plaintiff's working

04 memory was very close to the average range, and her trail making A and B demonstrate

05 excellent abilities in visual scanning and cognitive flexibilities.  (AR at 330.)  Although Dr.

06 Mashburn noted that plaintiff's auditory immediate memory, immediate memory, auditory

07 delay, and general memory appeared to be severely impaired, he added that "[i]t is difficult to

08 say whether or not this is an accurate picture of her current memory functioning."  *Id*.  Dr.

09 Mashburn opined that plaintiff could complete simple and some detailed tasks in a very timely

10 manner, though she may have difficulty with more complex or detailed tasks that change daily

11 or hourly.  He believed that redundant tasks are within her ability.  *Id*.  He also noted that

12 plaintiff may have difficulties with personal relationships because of her chaotic background

13 and borderline personality traits, and that she would likely get along well with others at times

14 and at other times present as helpless and passive.  *Id*.  The ALJ gave Dr. Mashburn's opinion

15 significant weight, finding it consistent with the objective medical evidence and claimant's

16 wide range of activities.  The Court agrees with the Commissioner that Dr. Mashburn's

17 conclusions did not require the ALJ to find Dr. Mashburn's opinion supported more significant

18 limitations found by Dr. Czysz's.

19      Finally, the ALJ properly weighed the opinions of state agency medical consultant

20 Richard Borton, Ph.D., who reviewed plaintiff's medical records and completed a Mental

21 Residual Functional Capacity Assessment on June 22, 2007.  (AR at 385-402.)  Dr. Borton

22 found that plaintiff "retains the ability to learn, remember, and complete simple and detailed

01  tasks, so long as they are predictable and repetitive," and "[s]he should be able to manage

02  casual social contact and tolerate stress acceptability for competitive employment."  (AR at

03  401.)  He noted that plaintiff's "[w]ork attendance would be compromised occasionally by

04  increased depressive symptoms, but should be within tolerable limits otherwise."  *Id*.  He

05  further noted that plaintiff "has difficult interpersonal relationships, but in casual contacts

06  would exhibit adequate skills to work in general public settings.   Her problems would be more

07  apt to arise with coworkers and supervisors, with whim she has to interact regularly.   She

08  should have adequate interpersonal skills, however, to manage occasional supervision and

09  occasional contact with coworkers."  (AR at 402.)   Additionally, Dr. Borton found that

10  plaintiff's "stress tolerance and safety awareness would decline with increased depressive

11  symptoms and/or increased drug use, but are currently adequate to support competitive

12  employment."  *Id*.  Dr. Borton's findings were affirmed by Renee Eisenhauer, Ph.D., on

13  February 14, 2008.  (AR at 562.)   The ALJ gave these opinions "significant weight," except

14  noting that plaintiff had only mild social limitations.  (AR at 17.)   The ALJ incorporated Dr.

15  Borton's conclusions into plaintiff's residual functional capacity assessment.

16         Contrary to plaintiff's contention, Dr. Borton found no marked limitations under either

17  the A or B categories, and specifically concluded that plaintiff "can learn, remember, and

18  complete simple and detailed, repetitive tasks."  (AR at 401.)   These conclusions do not

19  require the ALJ to find Dr. Borton's opinions support more significant limitations found by Dr.

20  Czysz's as plaintiff claims.   (Dkt. No. 14 at 10.)

21         The ALJ's other reason for rejecting Dr. Czysz's opinions was that she found them to be

22  inconsistent with plaintiff's wide range of daily activities.  (AR at 16.)   Those activities were:

01   "waking up and getting ready at the homeless shelter she was staying at, meeting her husband,

02   going to the library where she played word games and puzzles, going to scheduled

03   appointments and food banks, walking around, going to second hand shops, and window

04   shopping." (AR at 14.)  The ALJ also noted that plaintiff "obtained her own apartment with

05   her husband," and reported that she kept busy "cleaning and decorating her apartment." *Id.*

06   "She also reported doing bead work with a friend." (AR at 14.)  It was also reported that "she

07   and her husband walked around their neighborhood and had met quite a few people with whom

08   they had spent time." (AR at 14-15.)  In addition, plaintiff testified that she did the laundry,

09   not her husband, because he would forget to sort the laundry properly. (AR at 15.)  Plaintiff

10   also testified that she now drives alone and goes to appointments alone. (AR at 15.)  Plaintiff's

11   husband also testified that their activities included going to the library, taking bus

12   rides, window shopping, playing cards. (AR at 15.)  He also reported that plaintiff utilizes the

13   laundry facilities once a week and does not require any assistance. *Id.*

14        As the Commissioner argues, plaintiff's abilities to maintain a full daily schedule,

15   perform tasks that her husband could not remember, adapt to life changes moving from a shelter

16   to an apartment, spending time with friends, and traveling by herself, belie her claims of

17   disabling memory deficits, concentration, and socializing. (Dkt. No. 15 at 13.)  The ALJ

18   properly noted the contradictions between plaintiff's daily activities and her asserted

19   limitations in discounting Dr. Czysz's opinions. *See Morgan v. Comm'r of Soc. Sec. Admin.*,

20   169 F.3d 595. 601-02 (9th Cir. 1999) (holding an ALJ may discount a doctor's opinions of

21   mental limitations that conflict with the claimant's daily activities).

22   //

REPORT AND RECOMMENDATION
PAGE -14

01      It is the role of the ALJ to determine credibility, resolve conflict in medical opinions,

02   and resolve ambiguities.   *Andrews*, 53 F.3d at 1039.   The role of this Court is limited.   As

03   noted above, when the evidence is susceptible to more than one rational interpretation, it is the

04   Commissioner's conclusion that must be upheld.   *Thomas*, 278 F.3d at 954.   Although the

05   interpretation of the record urged by plaintiff may be theoretically possible, it simply cannot be

06   said that plaintiff's view of the evidence is the only rational interpretation.   Accordingly, the

07   Court concludes the ALJ did not err in evaluating Dr. Czysz's opinion.

08                    2.   Plaintiff's Testimony and Credibility

09      Plaintiff also attacks the ALJ's analysis of her credibility.   (Dkt. No. 14 at 11-14.)   She

10   argues that the ALJ erred in finding that the objective medical evidence and her activities of

11   daily living did not support the alleged severity of her psychological limitations.   *Id*.   The

12   Commissioner responds that the ALJ considered the entire record properly and offered clear

13   and convincing reasons to justify her adverse credibility finding.   (Dkt. No. 15 at 6-11.)

14      According to the Commissioner's regulations, a determination of whether to accept a

15   claimant's subjective symptom testimony requires a two step analysis.   20 C.F.R. §§ 404.1529,

16   416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p (1996).   First, the ALJ must determine whether

17   there is a medically determinable impairment that reasonably could be expected to cause the

18   claimant's symptoms.   20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-2; SSR

19   96-7p.   Once a claimant produces medical evidence of an underlying impairment, the ALJ may

20   not discredit the claimant's testimony as to the severity of symptoms solely because they are

21   unsupported by objective medical evidence.   *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir.

22   1991) (en banc); *Reddick*, 157 F.3d at 722 (internal citations omitted).   Absent affirmative

01 evidence showing that the claimant is malingering, the ALJ must provide "clear and

02 convincing" reasons for rejecting the claimant's testimony.   *Smolen*, 80 F.3d at 1284; *Reddick*,

03 157 F.3d at 722.

04    When evaluating a claimant's credibility, the ALJ must specifically identify what

05 testimony is not credible and what evidence undermines the claimant's complaints; general

06 findings are insufficient.   *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.   The ALJ may

07 consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

08 inconsistencies in testimony or between testimony and conduct, daily activities, work record,

09 and testimony from physicians and third parties concerning the nature, severity, and effect of

10 the symptoms of which he complains.   *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec.*

11 *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

12    In this case, the ALJ did not improperly reject plaintiff's subjective symptom testimony.

13 In her analysis, the ALJ identified the applicable legal standards and methodically applied them

14 to specific portions of the record.   The ALJ found that the objective medical evidence does not

15 support the alleged severity of plaintiff's psychological limitations.   (AR at 15.)   As discussed

16 at length above, the ALJ found the medical records of the Harborview psychiatrists noted

17 numerous inconsistencies in plaintiff's symptoms and allegations during her hospitalizations.

18 *Id*.   The ALJ further found that the psychological evaluations of Drs. Sanchez, Mashburn,

19 Borton, and Eisenhauer, demonstrate that the plaintiff's psychological impairments are not as

20 severe as she has alleged.   *Id*.

21    "While subjective pain testimony cannot be rejected on the sole ground that it is not

22 fully corroborated by objective medical evidence, the medical evidence is still a relevant factor

01   in determining the severity of the claimant's" impairments and their disabling effects.  *Cf.*

02   *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that the objective medical

03   evidence is a relevant factor in determining the severity of claimant's pain).  Moreover, the

04   ALJ did not discredit the plaintiff solely by pointing to objective medical evidence.  In

05   addition, the ALJ concluded that plaintiff's testimony, when coupled with certain of her daily

06   activities, did not square with the level of debilitating mental impairments plaintiff alleged.

07         The ALJ also provided an appropriate basis for concluding that plaintiff's activities

08   were inconsistent with her alleged impairments.  As indicated above, plaintiff's abilities to

09   maintain a full daily schedule, perform tasks that her husband could not remember, adapt to life

10   changes moving from a shelter to an apartment, spending time with friends, and traveling by

11   herself, were inconsistent with her claims of disabling memory deficits, concentration, and

12   socializing.  (AR at 14-15.)  While plaintiff's activities can be subject to more than one

13   rational interpretation, the ALJ's interpretation of the evidence must be upheld.  *See Burch v.*

14   *Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the evidence of daily activities

15   supported the ALJ's credibility determination and must be upheld).

16         The foregoing reasons offered by the ALJ to justify her adverse credibility

17   determination are sufficiently clear and convincing and supported by substantial evidence in the

18   record.  Although the evidence presented by the plaintiff may also admit an interpretation

19   more favorable to her, the ALJ's interpretation was rational and therefore binding upon this

20   Court.[1]  *See Magallanes*, 881 F.2d at 750.

21

22        [1]Plaintiff also argues that the ALJ failed to provide specific reasons for rejecting her testimony regarding her seizures.  (Dkt. No. 14 at 12-14.)  Plaintiff contends that she testified at the hearing that her seizures occurred approximately once a month, and – although the ALJ

REPORT AND RECOMMENDATION
PAGE -17

01          3.   Lay Witness Testimony

02          Plaintiff also asserts that the ALJ erred by failing to provide germane reasons for

03   rejecting the third party function report of her husband, John Arnold, and the statement

04   prepared by her case manager from the Downtown Emergency Center, Sarah Chamberlin.

05   (Dkt. No. 14 at 15-17.)   Defendant responds that the ALJ properly discredited the lay witness

06   statements of plaintiff's husband to the extent it contradicted her daily activities, and the lay

07   statements of Ms. Chamberlin because it was contradicted by the objective medical evidence

08   and the plaintiff's reported wide range of activities.   (Dkt. No. 15 at 16-17.)

09          In order to determine whether a claimant has an impairment, an ALJ may also consider

10   lay witness sources, such as testimony from family members.   20 C.F.R. § 404.1513(d)(4).

11   Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to

12

13   included a limitation on exposure to hazards including heights and dangerous machinery in her
     RFC assessment – she did not provide for unscheduled work loss.   *Id*. at 14.   The
14   Commissioner responds that while the ALJ did not specifically address plaintiff's seizures
     when evaluating plaintiff's credibility, any error was harmless because the medical record
15   shows that plaintiff's seizures were well controlled on medication.   (Dkt. No. 15 at 9-10; AR at
     12, 326, 460, 563, 715, 717, 720, 724, 727.)   The Commissioner further contends that the ALJ
16   discussed at length the evidence regarding plaintiff's seizures and specifically included
     plaintiff's seizure related limitations in the RFC by prohibiting plaintiff from working around
17   hazards such as heights and dangerous machinery.   (Dkt. No. 15 at 9-10.)   Plaintiff concedes
     in her reply brief that her seizure impairment has been effectively controlled by medication
18   since June 2007, but argues that she is entitled to a closed period of disability between her
     alleged onset date in 2002 and June 2007.   (Dkt. No. 16 at 8.)   The Court disagrees.   The
19   ALJ's opinion specifically accounted for plaintiff's seizure related limitations in her RFC.
     Furthermore, as the Commissioner argues, there is no basis to conclude that plaintiff would
20   miss work because of her seizures.   Plaintiff's argument that she is entitled to a closed period
     of disability was raised for the first time in her reply brief and is therefore waived.   *United*
21   *States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 n.1 (9th Cir. 2009)(new
     theory, first raised in a reply brief, is waived) (citing *United States v. Alcan Elec. & Eng'g, Inc*.,
22   197 F.3d 1014, 1020 (9th Cir. 1999)) (arguments raised on appeal for the first time in a reply
     brief are waived)).

REPORT AND RECOMMENDATION
PAGE -18

01  work is competent evidence, 20 C.F.R. § 404.1513(e), *Sprague v. Bowen*, 812 F.2d 1226, 1232

02  (9th Cir.1987), and therefore cannot be disregarded without comment.   *Dodrill v. Shalala*, 12

03  F.3d 915, 918-19 (9th Cir. 1993).   If an ALJ wishes to discount the testimony of a lay witness,

04  he must provide reasons germane to each witness and may not simply categorically discredit the

05  testimony.   *Id*.   Identifying inconsistencies between such statements and the record when

06  looked at as a whole is sufficient.   *Lewis v. Apfel*, 236 F.3d 503, 510-12 (9th Cir. 2001).

07          In this case, the ALJ discounted the third party function report of plaintiff's husband,

08  John Arnold.   (AR at 15.)   As summarized in plaintiff's brief, Mr. Arnold stated that plaintiff

09  had "memory problems," difficulty getting along with others, and "a fear of being by herself."

10  (AR at 157-63.)   The ALJ discounted this testimony because it conflicted with plaintiff's wide

11  range of activities.   (AR at 15.)   As discussed above, plaintiff's abilities to maintain a full

12  daily schedule, perform tasks that her husband could not remember, adapt to life changes

13  moving from a shelter to an apartment, spending time with friends, and traveling by herself,

14  were inconsistent with his claims of disabling memory deficits, concentration, and socializing.

15  (AR at 14-15.)   While plaintiff's activities can be subject to more than one rational

16  interpretation, the ALJ's interpretation of the evidence must be upheld.   *See Burch*, 400 F.3d at

17  680-81 (holding that the evidence of daily activities supported the ALJ's credibility

18  determination and must be upheld).   The foregoing reasons are germane to the credibility

19  determinations and the weight to be accorded to the testimony.   The ALJ did not err in

20  discounting the lay statements of plaintiff's husband.

21          Likewise, the ALJ properly discounted the testimony of plaintiff's case manager, Sarah

22  Chamberlin.   (AR at 17.)   Ms. Chamberlin stated that plaintiff is "not able to retain new

01   information without repetition or the use of her organizer." (AR at 174, 630.) She further

02   stated that plaintiff is "wholly dependent on her husband to remember details," and is "unable

03   to go anywhere unaccompanied as she may get lost." *Id*. She opined that plaintiff would be

04   unable to find or keep gainful employment. *Id*. The ALJ gave this opinion "little weight"

05   finding it inconsistent with the objective medical evidence and the plaintiff's reported wide

06   range of activities. (AR at 17.) As the Commissioner argues, and as discussed at length

07   above, the Harborview psychiatrists found no memory limitations (AR at 222-23, 237-38), Dr.

08   Sanchez reported that plaintiff's organizer was mostly blank (AR at 275-76), and Drs. Sanchez,

09   Mashburn, Borton, and Eisenhaur generally agreed that she had a functional memory. (AR at

10   278, 330, 401-02, 562.) In addition, the ALJ found that plaintiff was able to maintain a full

11   daily schedule, perform tasks that her husband could not remember, adapt to life changes

12   moving from a shelter to an apartment, spending time with friends, and travel by herself. (AR

13   at 14-15, 17.) As the Commissioner argues, plaintiff's disagreement with these findings is

14   insufficient to show error. The ALJ did not err in discounting the lay statements of plaintiff's

15   case manager.

16        B.   Step Three

17        Plaintiff also asserts that the ALJ's rejection of the medical opinion evidence and

18   testimonial evidence was significant because it led to the ALJ's finding at step three that

19   plaintiff did not meet equal listings 12.02, 12.04, 12.08, and 12.09. (AR at 13.) Plaintiff

20   reiterates her argument that the ALJ erred in this regard. (Dkt. No. 14 at 17-18.) As fully

21   discussed above, however, the ALJ properly weighed the opinion evidence and the subjective

22   statements of record. In addition, the ALJ properly determined plaintiff's RFC. Although

01  plaintiff argues that the ALJ's limitation to unskilled work fails does not reflect all of her

02  limitations, she has not demonstrated that the record requires any additional functional

03  limitations.   Because this Court has already rejected plaintiff's arguments, the Court finds the

04  ALJ did not err at step three.

05          C.      Step Four

06          At step four, the claimant bears the burden of proving that she can no longer perform her

07  past relevant work.   20 C.F.R. §§ 404.1512(a), 404.1520(f); *Barnhart v. Thomas*, 540 U.S. 20,

08  25 (2003).   Although the burden of proof lies with the claimant, the ALJ retains a duty to make

09  factual findings to support his conclusion, including a determination of whether the claimant

10  can perform the actual functional demands and job duties of her past relevant work or the

11  functional demands and job duties of the occupation as generally performed in the national

12  economy.  *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001) (citing Social Security

13  Ruling ("SSR") 82-61).   "This requires specific findings as to the claimant's residual

14  functional capacity, the physical and mental demands of the past relevant work, and the relation

15  of the residual functional capacity to the past work."   *Id*. at 845 (citing SSR 82-62).

16          In the present case, the ALJ satisfied the first requirement, as discussed above, in that

17  she made sufficiently specific findings of fact regarding plaintiff's RFC.   In support of her

18  conclusion that plaintiff could perform her past relevant work as a grocery bagger and hand

19  packager, the ALJ relied upon the testimony of the vocational expert ("VE") that a person with

20  plaintiff's current RFC could perform these positions.   (AR at 18.)   However, as plaintiff

21  argues, the ALJ failed to make adequate findings as to the physical and mental demands of

22  plaintiff's past work as the ALJ was required to do.   (Dkt. 14 at 19.)

01          Despite the ALJ's error in identifying the physical and mental demands of plaintiff's

02   past work, any error was harmless because the ALJ identified other jobs existing in the national

03   economy that plaintiff is able to perform.   (AR at 18); *Curry v. Sullivan*, 925 F.2d 1127, 1131

04   (9th Cir. 1991) (finding that harmless error applies to social security rulings).

05          D.      Step Five

06          The final issue raised by plaintiff is that the ALJ erred at Step 5 because she did not

07   asked the vocational expert ("VE") a hypothetical that included the limitations expressed by Dr.

08   Czysz and those that were testified to by plaintiff.  (Dkt. No. 14 at 21.)   Accordingly, plaintiff

09   argues the hypothetical asked of the VE was an incomplete and improper hypothetical.

10          After a plaintiff has demonstrated that she has a severe impairment that prevents her

11   from doing her past relevant work, she has made a prima facie showing of disability.  *Tackett*,

12   180 F.3d at 1100.   The burden then shifts to the Commissioner at step five to demonstrate that,

13   in light of the claimant's RFC, age, education, and work experience, she can perform other

14   types of work that exist in "significant numbers" in the national economy.  *Id.*; 20 C.F.R.

15   §§ 404.1520(f), 416.920(f).   An ALJ can determine this issue by calling upon a VE for

16   assistance.  *Tackett*, 180 F.3d at 1094.   In such a scenario, the ALJ must provide the VE with

17   an accurate and detailed description of the claimant's impairments, as reflected by the medical

18   evidence of record.  *Id.* at 1101.   An ALJ may, however, exclude restrictions in a hypothetical

19   question that are not supported by substantial evidence.  *Osenbrock v. Apfel*, 240 F.3d 1157,

20   1164-65 (9th Cir. 2001).

21          As discussed above, the ALJ appropriately rejected the opinion of Dr. Czysz and found

22   the plaintiff to be less than fully credible.  As a result, the failure to include the limitations

REPORT AND RECOMMENDATION
PAGE -22

01   suggested by Dr. Czysz's opinion and the plaintiff did not render the hypothetical tendered to

02   the VE either incomplete or improper.   The ALJ did not err.

V.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED.   A

proposed order accompanies this Report and Recommendation.

DATED this <u>6th</u> day of May, 2011.


Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -23